The Corrigan Law Firm
54B West Front Street
Keyport, NJ 07735
(732) 888-3868
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARYANNE COSIMANO,<br><br>　　　　Plaintiff,<br>v.<br><br>TOWNSHIP OF UNION,<br>FRANK BRADLEY, AND<br>DANIEL ZIESER,<br><br>　　　　Defendants. | Civil Action No. 2:10-cv-05710 (FSH)<br><br>CIVIL ACTION<br><br>**SECOND AMENDED COMPLAINT<br>AND JURY DEMAND** |

Plaintiff, MaryAnne Cosimano, residing at 36 Asbury Avenue, Oceanport, New Jersey 07757 by way of Complaint against Defendants Township of Union ("Union"), Frank Bradley ("Bradley"), and Dan Zieser ("Zieser") (collectively "Defendants") says:

## BACKGROUND FACTS

1.　Plaintiff, MaryAnne Cosimano ("Cosimano") is a former municipal police officer employed by Defendant Union from 1990 until her retirement date of August 1, 2010. As a police officer, Cosimano was a member of the PBA Local No. 69. Cosimano served the Department and the public with dedication and distinction. Despite Cosimano's stellar work performance and efforts, throughout Cosimano's employment and continuing through retirement she was treated differently because of her gender.

2. Defendant Union is a municipality of the State of New Jersey. Defendant's address is 1976 Morris Avenue, Union, New Jersey.

3. Defendant Bradley was the Township Administrator of Defendant Union at the time of the events surrounding this complaint. Bradley served in this position from December 1998 until October 2010; he then was placed on a leave of absence from October 2010 until his retirement in October 2011. Bradley's work address was 1976 Morris Avenue, Union, New Jersey.

4. Defendant Zieser is the civilian police director of defendant Union. Zieser has served in this position with Union since January 1, 2009. Defendant's work address is 981 Caldwell Avenue, Union, New Jersey.

5. Cosimano began her civil service employment in 1985 with the New Jersey Division of Motor Vehicles in the job title "safety specialist III." Cosimano served in this position until 1986.

6. In 1986, Cosimano commenced employment with Union in the police department. Cosimano held the title of "communications operator" until 1989.

7. In February 1989, Cosimano commenced employment as a police officer with Union County. Cosimano served in this position for approximately a year.

8. In February 1990, Cosimano again continued her employment with the Union police department, but as a law enforcement officer. Cosimano was Union's first female police officer. Cosimano served as a Patrol Officer from 1990 until 2000.

9. In 2000, Cosimano was transferred/promoted to the Detective Bureau. As a Detective, Cosimano received a pensionable yearly stipend of approximately $3,000. Cosimano served as a Detective until May 2010, and at all times was an exemplary

employee.

10. Union transferred Cosimano from the Detective Bureau in May 2010, demoting her back to the Patrol Division. The decision to transfer Cosimano back to the Patrol Division was made solely by Zieser and Deputy Chief of Police Rick Landolfi, without any input from the Captain of the Detective Bureau (Ronald Berry). The transfer decision was made notwithstanding protest (against the decision) by Captain Berry. This transfer and demotion induced Cosimano to retire.

11. As a result of this transfer and demotion, Cosimano was returned to her Patrol Officer salary (without the additional stipend paid to Detectives). On June 2, 2010, Cosimano filed a grievance protesting this deduction in pay from Detective to Patrol Officer as a violation of the collective negotiations agreement between the Township and the PBA Local No. 69 ("CNA"). On June 4, 2010, Defendant Zieser denied Cosimano's grievance. This grievance was later withdrawn by the PBA.

12. Upon Cosimano's inquiry, Zieser orally represented to Cosimano on behalf of Union that Cosimano would receive lifetime health benefits paid for by Union upon retirement with 25 years of service credit. Zieser did so as a scheme to lead Cosimano to believe she would receive health benefits at Union's expense upon retirement. At no time during the conversation did Zieser inform Cosimano or attempt to represent that he does not have authority to determine whether a police officer is entitled to health benefits upon retirement.

13. Relying on Defendants' representations, Cosimano purchased enough service credit from the Police and Firemen's Retirement System ("PFRS") to accumulate 25 years of PFRS service credit. Cosimano retired from her employment with Union

effective August 1, 2010. Upon retirement, Cosimano had a total of 25 years and 2 months of service credit with PFRS.

14. Following Cosimano's retirement with Union, and her initial receipt of health benefits, Union Human Resources Director Kathleen Green ("Green") decided to rescind Cosimano's receipt of benefits. Green allegedly made a similar initial decision to deny a male police officer, Nicholas Ardito's health benefits prior to his actual retirement, but Bradley and Zieser intervened on Ardito's behalf, and reversed Green's initial determination. Ardito retired with full health benefits at Union's expense.

15. While Green may have made an initial determination pertaining to Cosimano's benefits in light of her years of "service," Bradley and Zieser condoned it and made the final decision to unlawfully rescind Cosimano's health benefits subsequent to her retirement. This was the first instance in the history of Union in which a public safety officer had their health benefits either denied upon retirement or rescinded subsequent to retirement.

16. Defendants' actions in rescinding Cosimano's benefits reneged on Zieser's promise that Cosimano would receive lifetime health benefits at Union's expense. Defendants acted to deprive Cosimano of health benefits as a form of discrimination against Cosimano because she is a woman, and as a form of retaliation because she had previously filed a grievance challenging the removal her stipend as a result of her transfer/demotion.

17. Cosimano requested PBA Local No. 69 ("PBA") to file an unfair practice charge on her behalf due to the Defendants' denial/rescission of Cosimano's lifetime health benefits.

18. On or about August 24, 2010, the PBA did file an unfair practice charge on Cosimano's behalf, contending that Township's actions repudiate the CNA. The PBA sought an Order requiring Union to cease and desist from this repudiation of the CNA, and restraining Union from discontinuing Cosimano's health benefits.

19. On or about September 2, 2010, Cosimano was to receive ½ of her terminal payout from Union, representing her accumulated sick, compensatory, personal, and vacation time. However, Zieser told the Police Department Secretary (Theresa Wilson) to "hold off" processing Cosimano's terminal leave benefits, causing it to be delayed by several weeks and causing Cosimano great anxiety. On September 15, 2010, Cosimano mailed her First Amended Complaint to the Superior Court of New Jersey (stamped as received by the court on September 20, 2010). On September 16, 2010, a check was issued to Cosimano for the payment of her terminal leave benefits in the amount of $47,271.25.

### **FIRST COUNT** (Sex Discrimination)

20. Cosimano repeats the allegations stated in paragraphs 1-19 as if set forth fully at length herein.

21. Defendants claim that its "legitimate, nondiscriminatory reason" for denying Cosimano's benefits is she did not meet Defendant Union's self-serving "test" of 25 years of service with the Township and/or as a "sworn law enforcement officer." The verbiage of Union's purported "test" is not provided anywhere in the CNA. An arbitrator did determine that Article VI of the CNA may be combined with Article IV of the CNA for the purposes of determining the definition of "service." However, Article VI simply

provides in pertinent part:

## ARTICLE VI

## SENIORITY

C. <u>Prior service as a full time, sworn, paid Police Officer, with a municipal, county or state police agency</u>, **which requires successful completion of an accredited police academy** shall not be considered in calculating seniority for the purposes of layoffs, promotions and vacations selections and vacation accrual; however, such prior service shall be considered for the purposes of determining . . . <u>pensions benefits</u>.

22. Defendant Union is paying lifetime health benefits for several retired male Union police officers that do not Union's purported "test" of 25 years of service with the Township and/or as a "sworn law enforcement officer," and who are similarly situated as Cosimano.

23. For example, Paul Bruno is a retired Union police officer that had an employment history consisting of the following:

Essex County Welfare Investigator - January 1976 – January 1985

Essex County Police Officer - January 1985 – May 1992

Union Township Police Officer - May 1992 through August 2002

A "Welfare Investigator" does not receive training in a police academy. In fact, Mr. Bruno did not attend a police academy until 1985, subsequent to his employment as an Essex County Welfare Investigator. Thus, Mr. Bruno would have only had 17 years of "service" under Union's "test." Upon information and belief, prior to Mr. Bruno's

retirement, Union did not question whether he was entitled to full health benefits. Mr. Bruno is receiving lifetime health benefits paid by Union.

24. Another example of a similar retired Union police officer is Frederick McCarrick. Mr. McCarrick had an employment history consisting of the following:

Union Township Police Officer – November 14, 1974 – December 1, 1995.

Thus, Mr. McCarrick would have only had twenty-one years of "service" with nothing that can possibly be construed as "twenty-five years of service." Upon information and belief, prior to Mr. McCarrick's retirement, Union did not question whether he was entitled to full health benefits. Mr. McCarrick is receiving lifetime health benefits paid by Union.

25. Another example of a similar retired Union police officer is Albert Stotzer. Mr. Stotzer had an employment history consisting of the following:

Union Township Police Officer – February 21, 1970 – February 1, 1994

Letter Carrier U.S. Post Officer September 1966 – January 1970.

Thus, Mr. Stotzer would have only had 24 years of "service" under Union's "test." Upon information and belief, prior to Mr. Stotzer's retirement, Union did not question whether Mr. Stotzer was entitled to full health benefits. Mr. Stotzer is receiving lifetime health benefits paid by Union.

26. A fourth example of a similar retired Union police officer (Sergeant) is Lawrence Kuntz. Mr. Kuntz had an employment history consisting of the following:

Union Township Police Officer – April 3, 1978 – July 1, 2001.

Thus, Mr. Kuntz would have only had 23 years of "service" under Union's "test." Upon information and belief, prior to Mr. Kuntz's retirement, Union did not question whether Mr. Kuntz was entitled to full health benefits. Mr. Kuntz is receiving lifetime health

benefits paid by Union.

27. Therefore, Defendants changed their past practice of providing health benefits upon retirement to public safety officers, regardless of their precise "service" upon Cosimano's retirement. She was the first female public safety officer of Union to retire. Upon information and belief, Defendants did not question whether any public safety officers were entitled to health benefits either prior or subsequent to retirement before Ardito's pending retirement.

28. Cosimano's lifetime health benefits paid by Union were rescinded/denied because of her "sex."

29. Defendants violated N.J.S.A. § 10:5-12(a) by discriminating against Cosimano in compensation or in a term, condition, and/or privilege of employment by refusing to pay her lifetime health benefits because Cosimano is a woman.

30. The foregoing actions by Defendants have damaged Cosimano.

WHEREFORE, Plaintiff Cosimano demands judgment against Defendant Union for lifetime health insurance benefits, compensatory damages, punitive damages, prejudgment and postjudgment interest, costs of suit, attorneys' fees, and such further relief as this Court deems equitable and just.

WHEREFORE, Plaintiff Cosimano demands judgment against Defendants Zieser and Bradley for compensatory damages, punitive damages, prejudgment and postjudgment interest, costs of suit, attorneys' fees, and such other relief as this Court deems equitable and just.

**SECOND COUNT** (Retaliation For Asserting Rights Under A Collective Negotiations Agreement and filing a Complaint with the Public Employment Relations Commission- 42 U.S.C. § 1983)

31. Cosimano repeats the allegations stated in paragraphs 1-30 as if set forth fully at length herein.

32. Cosimano requested the PBA to file a grievance on her behalf protesting the reduction in pay due to her demotion from Detective to Patrol Officer.

33. On June 2, 2010, the PBA did file a written grievance on Cosimano's behalf demanding that Cosimano be returned to the same pay grade of Detective.

34. On or about September 2, 2010, the PBA also filed an unfair practice charge on Cosimano's behalf demanding that Cosimano be paid health benefits.

35. Cosimano was entitled to assert her rights pursuant to the New Jersey Employer-Employee Relations Act, N.J.S.A. § 34:13A-1, *et. seq.*, and did assert her rights under the Act. These rights are protected by the 1st Amendment of the United States Constitution. Defendants were angered that Cosimano sought to engage in this protected activity.

36. Defendants' decision to deny Cosimano lifetime health insurance benefits and terminal pay was made a form of punishment because Cosimano asserted her rights under the PBA collective negotiations agreement.

37. Under color of law, Defendants deprived Cosimano of her rights, privileges, or immunities secured by the United States Constitution. This action violated 42 U.S.C. § 1983.

WHEREFORE, Plaintiff Cosimano demands judgment against Defendant Union for lifetime health insurance benefits, compensatory damages, prejudgment and postjudgment interest, costs of suit, attorneys' fees, and such further relief as this Court deems equitable and just.

WHEREFORE, Plaintiff Cosimano demands judgment against Defendants Bradley and Zieser for compensatory damages, punitive damages, prejudgment and postjudgment interest, costs of suit, attorneys' fees, and such other relief as this Court deems equitable and just.

*[signature]*
The Corrigan Law Firm
Attorneys for Plaintiff

Dated: August 6, 2013

## CERTIFICATION PURSUANT TO R. 4:5-1

Plaintiff, hereby certifies that the matter in controversy is not the subject of any other pending or contemplated judicial or arbitration proceeding. Plaintiff is not currently aware of any other party that should be joined in this action.

*[signature]*
The Corrigan Law Firm
Attorneys for Plaintiff

Dated: August 6, 2013

## JURY DEMAND

Plaintiff hereby demands trial by jury of all issues so triable.

_____
The Corrigan Law Firm
Attorneys for Plaintiff

Dated: August 6, 2013