NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARYANNE COSIMANO,<br><br>        Plaintiff,<br><br>v.<br><br>TOWNSHIP OF UNION, *et al.*,<br><br>        Defendants. | Civil Action No.: 10-5710 (JLL)<br><br>OPINION |

**LINARES**, District Judge.

Presently before this Court are various motions *in limine* filed by Plaintiff Maryanne Cosimano and Defendants the Township of Union (the "Township"), Township Administrator Frank Bradley ("Bradley"), and Police Director Daniel Zieser ("Zieser"). On June 15, 2016, this Court heard oral argument on the pending motions. (ECF No. 189). The Court resolved some of the issues on the record at the hearing, and reserved on others. (See ECF Nos. 189, 190). This Opinion resolves the issues on which the Court reserved. An appropriate Order accompanies this Opinion.

    **1. Preclusive Effect of the March 23, 2016 Arbitration Opinion and Award**

        **a. Plaintiff is Not Permitted to Re-Litigate the Issue of her Entitlement to Retiree Health Benefits under the CBA**

The parties dispute the effect that a March 23, 2016 Arbitration Opinion and Award in a grievance filed by PBA Local 69 (the "Union") has on Plaintiff's ability to litigate her sex discrimination and retaliation claims.

Defendants move to bar evidence offered in support of any claim of entitlement to retiree health benefits pursuant to the CBA or alleging discrimination and/or retaliation based on the denial of retiree health benefits. (ECF No. 176-1). Specifically, Defendants seek to exclude any and all testimony, exhibits and the testimony of an expert witness to testify about Plaintiff's alleged entitlement to retiree health benefits under the CBA and damages from the denial of such benefits. (*Id.* at 1-2).

Defendants principally argue that Plaintiff is barred from introducing any of the above-referenced evidence relating to her entitlement to health benefits on account of the March 23, 2016 Opinion and Award of an arbitrator finding that she was not contractually entitled to retiree health benefits, which decision has been affirmed and entered through a State Court Judgment by the Superior Court of New Jersey. Defendants also note that Plaintiff is barred from re-litigating this issue pursuant to Judge Hochberg's determination that "Plaintiff may not re-litigate the issue of what type of service qualifies for health benefits because that issue has been decided and affirmed as to her claim." (ECF No. 176-1, at 4, quoting ECF No. 85, Hochberg Opinion).

Although Plaintiff's opposition papers indicate that "Plaintiff has no intention of challenging [the Arbitrator's] interpretation," (ECF No. 176-3 at 11), at oral argument, Plaintiff's counsel argued that Plaintiff should not be precluded from re-litigating the arbitrator's contractual interpretation at trial. (ECF No. 196, "Hearing Tr." at 18:17-22:11). In support of her position that "the arbitrator's determination [does not] ha[ve] any conclusive effect in this case concerning her interpretation of the contract" (*id.* at 18:17-20), Plaintiff principally relies on the seminal Supreme Court decision of *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974) and the Sixth Circuit case of *Nance v. Goodyear Tire and Rubber Co.*, 527 F.3d 539 (6th Cir. 2008).

The cases relied upon by Plaintiff stand for the proposition that a Plaintiff alleging a civil rights violation should not be precluded from litigating her claim in court on account of an arbitrator's adverse ruling on a related contractual issue. This is so "[b]ecause the 'specialized competence of arbitrators pertains primarily to the law of the shop, not the law of the land.'" *Barrentine et al., v. Arkansas-Best Freight System, Inc.*, et al, 450 U.S. 728, 742 (1981) (quoting *Gardner-Denver*, 415 U.S. at 57). In *Gardner-Denver*, the Supreme Court held that plaintiff's Title VII claim of race discrimination was not barred by an arbitrator's determination that plaintiff had been fired for "just cause." 415 U.S. at 49. The Court noted that "[a]rbitral procedures, while well suited to the resolution of contractual disputes, make arbitration a comparatively inappropriate forum for the final resolution of rights created by Title VII." *Id.* at 56. Similarly, in *Nance,* the Sixth Circuit determined that an arbitrator's finding that plaintiff's employer had properly treated plaintiff as having "resigned without notice" under the terms of the CBA did not preclude plaintiff from re-litigating that same issue in her lawsuit alleging a violation of the ADA. 527 F.3d at 548. The Sixth Circuit stated that "a prior arbitration over a contractual issue [does not] preclude[] (or 'collaterally estop[]') a plaintiff from re-litigating that same issue in federal court." *Id.*

This case, however, is distinguishable from *Gardner-Denver* and *Nance*, because Plaintiff's sex discrimination and retaliation claims are sufficiently distinguishable from the underlying contractual issue of whether Plaintiff was or was not entitled to retiree health benefits based on the CBA. In fact, as Plaintiff herself has conceded: "the contract is essentially irrelevant. All the arbitration decision means is that Cosimano can no longer assert that she is entitled to health benefits under the contract. It has nothing to do with the sex discrimination claim[.]" (ECF No. 176-3 at 11). Therefore, the Court finds no reason to depart from earlier rulings of this Court that Cosimano "may not re-litigate the issues of what type of service qualifies for health benefits

3

[under the contract], because that issue has been decided and affirmed as to her claim." (ECF No. 85 at 5).

For the above reasons, the Court will not permit Plaintiff to re-litigate the issue of her entitlement to benefits under the terms of the CBA.

### b. Plaintiff is Permitted to Introduce Evidence of Male Employees who Retired Under the May 1999 Patrol Agreement and the December 2007 Superior Officer's Agreement ("SOA")

In support of her sex discrimination claim, Plaintiff intends to "present evidence of male police officers and police superiors who presently receive health insurance at retirement fully paid for by the Township with the same level of service as Cosimano" regardless of the particular contract under which the male employees retired. (ECF No. 194 at 2). Plaintiff's argument is grounded in her belief that despite a language change in Article VII of the CBA in the revised May 1999 Patrol Agreement, the "Insurance" provision of the CBA has remained unchanged throughout the years. (*Id.*).

Defendants originally argued that "any proposed witnesses and/or exhibits relating to . . . the years of service of other retired officers should be barred as irrelevant to any claims to be heard at trial" because the Arbitrator already determined that there was insufficient evidence to support a "past practice" of giving male employees benefits to which they were not contractually entitled. (ECF No. 176-1 at 11). In their supplemental briefing, Defendants note that on account of the change in contract language which was discussed at length in Arbitrator Zauzer's Opinion, "the only patrol officers who could possibly be similarly situated to Plaintiff are those who retired after May 1999, while the only Superior Officers who could be similarly situated are those who retired after December 2007." (ECF No. 195 at 7).

4

Although the Court notes the Arbitrator's finding that "[t]he practice is equivocal at best" (ECF No. 176-3, Arbitration Opinion, "Arb. Op." at 23), Defendants' treatment of similarly situated male employees is integral to Plaintiff's sex discrimination case. Thus, under *Gardner-Denver*, Plaintiff shall be permitted to introduce evidence of similarly situated male employees who Plaintiff alleges were treated preferentially. The pertinent question, however, is which employees are "similarly situated." At this point, the Court finds that men who retired under the CBA applicable to patrol persons after May 1999 (the CBA under which Plaintiff retired) and superior officers who retired under the Superior Officer's Agreement ("SOA") after December 29, 2007 (the date that the SOA contracts began to incorporate the language contained in the updated Patrol Agreement), are clearly "similarly situated" to Plaintiff. Therefore, Plaintiff shall be permitted to introduce evidence and testimony related to patrol persons who retired with health benefits after May 1999 and superior officers who retired with health benefits after December 29, 2007, regardless of any determination may by Arbitrator Zauzer with respect to those individuals.

The Court recognizes Plaintiff's position that there should be no demarcation between employees who retired before or after the effective date of the May 1999 Patrol Agreement, and that under *Nance and Gardner-Denver*, Plaintiff should be permitted to re-litigate the effect of the contract change before this Court with respect to her argument that similarly situated male employees were treated differently. At this time, the Court will reserve with respect to the admissibility of evidence pertaining to male employees who retired prior to May 1999 (under the patrol agreement) and December 29, 2007 (under the SOA). To the extent that Plaintiff seeks to introduce evidence pertaining to these individuals, the Court will hold a hearing outside the presence of the jury at the time the Plaintiff seeks to introduce that evidence. At that time Plaintiff will be required to make a proffer as to the exact situation pertaining to the evidential value of

those individuals that makes them similarly situated and the evidential value of same to her discrimination claim.

To be clear, to the extent permissible under the Federal Rules of Evidence, Plaintiff may introduce evidence of male officers who retired under the patrol agreement after May 1999 and under the SOA after December 29, 2007.. The Court reserves on Defendants' motion to bar evidence of male employees who retired prior to these dates. To the extent Plaintiff wishes to introduce evidence of males retiring prior to May 1999 (under the patrol agreement) and prior to December 29, 2007 (under the SOA), the Court will permit Plaintiff to make her argument as to the relevancy of this evidence at trial during a proffer hearing outside the presence of the jury.

### c. The Cosimano and Garretson Arbitration Opinions and Awards are Not Admissible into Evidence

Plaintiff seeks to exclude the Garretson and Cosimano arbitration awards and decisions, arguing that such decisions are irrelevant because "[t]he arbitrator considered only whether the contract was violated" and are likely to confuse the jury. (ECF No. 181-2 at 12-14).

Defendant, on the other hand, argues that "[t]he decision of the Arbitrator is controlling on the issue of the proper interpretation of the contract, and must come into evidence in order to avoid confusion or a conflicting resolution of the proper determination of the contract language." (ECF No. 181-9 at 15). Defendant also argues that if both sides intend to introduce the CNA into evidence, it is critical that both the Cosimano and Garretson awards be entered into evidence so as not to mislead the jury (*id.* at 19), and moreover, that Defendants would be unfairly prejudiced if they cannot introduce evidence that the Township was under no obligation to provide Plaintiff with benefits (*id.* at 22).

6

Federal Rule of Evidence 403 compels a court to weigh the probative value of evidence against the danger that the evidence will, *inter alia*, confuse the jury. This same standard applies when considering the admissibility of an arbitration award. *See, e.g., Garden-Denver*, 415 U.S. at 60 ("The arbitral decision *may* be admitted as evidence and accorded such weight as the court deems appropriate.") (emphasis added); *see also Blakey v. Continental Airlines*, No. 93-cv-2194, 1997 WL 152479, *9 (D.N.J. Sept. 9, 1997) ("There is no requirement that a court must allow an arbitration decision to be admitted at all."). Given the overlapping nature of the arbitration awards and the claim at issue in this matter, the Court finds that introduction of the arbitration awards would only serve to confuse the jury. Accordingly, the Court will bar both the Garretson and Cosimano arbitration awards and opinions from being marked into evidence for the jury's review.

This is not to say, however, that if relevant and appropriate, Defendants will be barred from informing the jury of the award in another manner that complies with the rules of evidence. Moreover, because the Court has already ruled that Plaintiff will not be permitted to re-litigate the issue of her entitlement to health benefits under the contract, the majority of Defendants' arguments as to the admissibility of the arbitration opinions are moot. As to Defendants' concern that they will not be permitted to put on a defense without introducing the contract into evidence, the Court simply notes that there are more manageable ways, as for example a jury instruction from the Court, to advise the jury of the arbitrators' determination without introducing the opinion and award itself into evidence.

In summary, the Court will bar the introduction into evidence of the arbitration opinions or awards document pertaining to Officers Garretson and Cosimano.

### 2. Defendants are Not Permitted to Introduce Evidence of their Treatment of Officer Garretson

Aside from Plaintiff's motion to bar admission of the Garretson arbitration award (discussed above), Plaintiff seeks to "exclude all testimony, exhibits, and any other evidence concerning any events subsequent to the date Cosimano filed her Complaint." (ECF No. 181-2 at 17). Plaintiff cites to several cases in support of her position that "non-discriminatory actions taken by Defendants, subsequent to the filing of a discriminatory Complaint is not admissible" because "[s]uch actions have no probative value." (ECF No. 181-11 at 21). Thus, Plaintiff maintains that Defendants' treatment of Officer Garretson (and the resulting arbitration award in the Township's favor) have "no probative value and is misleading" since the Garretson grievance was filed *after* Plaintiff initiated this action, thereby putting Defendants on notice that their actions were subject to scrutiny.

At oral argument, the Court asked Defense counsel how the Garretson evidence is relevant to whether or not Plaintiff was discriminated against. (Hearing Tr. at 50:15-16). Defense counsel responded that "it is relevant to the issue of did the Township correctly interpret the contract, which was that plaintiff was not eligible for benefits at the time she retired and to which we're treating everybody consistently, yes, we are, we're treating everyone consistently." (*Id.* at 50:17-22). Stated differently, Defendants argue that "the evidence that Defendants seek to introduce will confirm that the Township was both correct and consistent in its interpretation of the contract and in its treatment of all officers who sought retiree health benefits." (*Id.* at 34).

Because the Court has already determined that Plaintiff will be precluded from re-litigating the issue of her entitlement to retiree health benefits under the terms of the CBA, Defendants' argument that the Garretson award is relevant to the contractual interpretation issue is moot. The remaining question is whether Defendants shall be permitted to offer the treatment of Officer Garretson to support their position that they treated all officers, regardless of their sex, consistently.

8

The Court has reviewed the cases cited by Plaintiff and finds same support the general proposition that subsequent non-discriminatory actions taken by an employer after the employer becomes alerted to a pending discrimination action are rarely relevant circumstantial evidence. *Lam v. Univ. of Hawai'i*, 40 F.3d 1551, 1561 n. 17 (9th Cir. 1994) ("[I]t is clear that nondiscriminatory employer actions occurring subsequent to the filing of a discrimination complaint will rarely even be relevant as circumstantial evidence in favor of the employer."); *Chuang v. Univ. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1129-30 (9th Cir. 2000); *Gonzalez v. Police Dep't, City of San Jose*, 901 F.2d 758, 761-62 (9th Cir. 1990)). Citing to some of the case law relied upon by Plaintiff in this action, the Third Circuit recently spoke to the probative value of a defendant's post-filing, non-discriminatory actions. *Patterson v. Strippoli*, 2016 WL 231532 (3d Cir. Jan. 20, 2016). In *Patterson*, an inter-racial couple filed a 1983 claim against a councilman alleging that the councilman enforced an ordinance against them on account of their inter-racial relationship. In denying the defendants' motion for summary judgment, the Court found that evidence offered by the defendant that he enforced the ordinance against non-interracial couples after Plaintiffs filed their complaint was "not probative of whether the Pattersons were treated differently before the suit was filed." *Id.* at *4.

As in *Patterson* where the Third Circuit found the defendant's similar treatment of non-interracial couples after the complaint was filed to be "non-probative," this Court finds that the Defendants' treatment of Officer Garretson over a year after this action was filed is similarly non-probative as to Plaintiff's sex discrimination claim. Thus, the Court will not permit Defendants to offer any evidence as to their decision to deny Officer Garretson retiree health benefits.

3. **Evidence Relating to Other Alleged Acts of Discrimination Against Plaintiff**

Defendants move to bar evidence and testimony pertaining to the following alleged acts of harassment or discrimination against Plaintiff:

(1) the allegation that since Cosimano became a Union Township Police Officer in 1990, she has been the only Officer who did not receive a properly fitting bullet-proof vest despite making frequent complaints, and the allegation that all males received properly fitting vests;

(2) on February 29, 2000, Cosimano's supervisor was required to draft a memorandum explaining the basis for the superior rating of Cosimano and this had never been done to a superior supervising a male;

(3) on January 30, 2001, Cosimano was asked to draft a memorandum concerning her need to relieve herself in the bathroom while on police surveillance and no male police officer had ever been required to do so; and

(4) in 2012 Cosimano was discriminatorily stripped of her title as Detective, despite positive evaluations and work performance.

Defendants maintain that the prior incidents of alleged discrimination are not relevant to Plaintiff's case or otherwise inadmissible because: (1) the decision-makers involved in those incidents were different decision-makers than those involved in the decision to deny Plaintiff retiree health benefits and therefore do not show Defendants' intent; (2) the incidents are too remote in time to be relevant; (3) they are not bearing on discriminatory intent since they do not clearly (that is, unambiguously) evidence a discriminatory state of mind; (4) Plaintiff does not offer any evidence other than her own testimony to support the discriminatory nature of these incidents; and (5) the incidents are improper propensity evidence.

In response, Plaintiff argues that these incidents are highly relevant as circumstantial evidence of Defendants' discriminatory animus.[1]  As to Defendants' remaining arguments, Plaintiff retorts that these issues go to the weight of the evidence rather than admissibility, and notes that Defendants will be able to flesh out any weaknesses through cross-examination.

---

[1] At oral argument, Plaintiff's counsel conceded that incidents in which the Individual Defendants Zieser and Bradley were not involved cannot be used to prove their intent. (Hearing Tr. at 64:23-65:6).

Only "relevant" evidence is admissible at trial. *See* Fed. R. Ev. 401. Relevant evidence is any evidence that "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." *Id.* "Rule 401 does not raise a high standard." *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 109-110 (3d Cir. 1999).

First, the Court finds that evidence relating to Cosimano's demotion is relevant to her sex discrimination claims. Unlike the other incidents which occurred as long as ten years prior to Plaintiff's retirement and prior to the Individual Defendants' employment, Plaintiff's demotion was the event immediately precipitating her retirement, and was a decision issued while the Individual Defendants were employed by the Township. Therefore, Defendants cannot seriously dispute that Plaintiff's demotion and the facts surrounded that demotion are relevant to her instant claims. Accordingly, to the extent such evidence is appropriate under the Federal Rules of Evidence, Plaintiff shall be permitted to offer evidence pertaining to her belief that her demotion from the Detective position was an act of sex discrimination.

With regards to the remaining three incidents identified above, the Court notes at the outset that to the extent these incidents cannot be tied to the Individual Defendants Zieser and Bradley, Plaintiff may not use these incidents as evidence of their discriminatory animus. *See, e.g., Ezold v. Wolf, Black, Schoor and Solis-Cohen*, 983 F.2d 509, 547 (3d Cir. 1993) (holding that "several stray remarks by a nondecisionmaker over a period of five years, while inappropriate, were [in]sufficient to prove that [defendant law firm's] associate evaluation and partnership admission process were so infected with discriminatory bias that such bias more likely motivated [the law firm's] promotion decision than its articulated legitimate reason"). Plaintiff's counsel conceded this point at oral argument. (*See* Hearing Tr. 64:23-65:6).

What is less clear is the relevance of the three other incidents to Plaintiff's sex discrimination claim as against the Township. Plaintiff is entirely correct that she is entitled to support her claim of sex discrimination by pointing to circumstantial evidence that the Township discriminated against her based upon her sex. However, circumstantial evidence in the context of an NJ LAD claim must "support an inference of discrimination." *Brown v. County of Passaic*, 2014 WL 2533768, *5 (N.J. Super. Ct. App. Div. June 6, 2014). To that end, where the discriminatory nature of proposed circumstantial evidence is ambiguous at best, the Third Circuit has affirmed the court's decision excluding that evidence. *See Martin v. Port Authority*, 115 Fed. Appx. 556, 558-59 (3d Cir. 2004) (holding that magistrate judge did not abuse her discretion in excluding testimony relating to an alleged discriminatory remark made by the father of plaintiff's supervisor and where the "comment did not contain any derogatory racial epithets; [and] in fact . . . did not even mention race"); *see also Lee v. Jackson*, Civ. No. 11-195, 2013 WL 2062246, *10 (E.D. Pa. May 14, 2013) ("Plaintiff's personal opinion that the comments show anti-Chinese bias is simply insufficient.").

In this case, Plaintiff has not identified *any* evidence to support her testimony that the first three incidents identified above could support an inference of sex discrimination. That is, Plaintiff has not pointed to any facially derogatory statement by any individual whose actions can be attributed to the Township, nor has she offered any evidence that males were in fact not subjected to the same treatment. Plaintiff would ask the jury to infer, based solely on her own testimony, that each of the first-three incidents happened to her and her alone because she is a woman. The Court finds this logic to be too attenuated to support an inference of discrimination.

Even if these incidents presented clear evidence of sex discrimination as against the Township, the Court finds that the prejudice that such evidence would have on the Individual

Defendants—even with the benefit of a limiting instruction—would be great. Moreover, given the remoteness of these incidents, the Court credits Defendants' argument that it would be unfeasible to cull together witnesses or other evidence tending to discredit the alleged discriminatory nature of these incidents.

For the above reasons, to the extent such evidence is otherwise appropriate under the Federal Rules of Evidence, the Court will permit Plaintiff to present evidence and testimony pertaining to the reasons for her demotion in her case-in-chief but will bar Plaintiff from introducing evidence or testimony in her case-in-chief pertaining to: (1) whether she was denied a properly fitted bullet proof vest because of her sex; (2) the requirement that her supervisor explain the reason for Plaintiff's high marks; or (3) the memorandum explaining her need to take a bathroom break.

### 4. Evidence of Alleged Harassment/Retaliation of Other Individuals

Defendants have moved to bar any "testimony and evidence pertaining to other alleged harassment, retaliation, discrimination and mistreatment of individuals other than Plaintiff." (ECF No. 180-1).[2] Specifically, Defendant has moved to bar evidence pertaining to: (1) "an e-mail drafted by the Deputy Chief Landolfi in 2007 concerning meetings about a management program" and (2) "generalized claims of retaliation allegedly made by Officer DiGena." (*Id.* at 1). In summary, Defendant asserts that this evidence is irrelevant, unduly prejudicial, inadmissible character evidence, and too speculative to be probative. (*Id.* at 2).

---

[2] Defendants had also moved to bar all testimony and evidence pertaining to other legal proceedings; however, Plaintiff's counsel has withdrawn any request to introduce evidence pertaining to an earlier litigation. (Hearing Tr. at 56:9-11). Accordingly, Plaintiff will not be permitted to introduce any evidence pertaining to the matter of *Gilleece v. Twsp of Union*, Civ. No. 08-2795 (D.N.J. 2010).

13

According to Plaintiff, this evidence pertains to her claim for retaliation under Section 1983—specifically, that she was denied retiree health benefits out of retaliation for filing a grievance with respect to her 2010 demotion.

Plaintiff argues that under the *McDonnell Douglas* burden shifting test, applicable to Section 1983 claims, the above "[e]vidence of past retaliation towards employees due to union activity is circumstantial evidence that makes it more likely that Defendants harbored retaliatory intent in [her] case." (ECF No. 180-3 at 4-5). Moreover, Plaintiff alleges that because this evidence is indicative of Defendants' retaliatory intent (and not, as Defendants allege, to show Defendants' propensity to act a certain way) it is probative of her retaliation claim. The Court addresses both pieces of proposed evidence, below.

### a. The 2007 Landolfi E-Mail

Plaintiff seeks to introduce an e-mail from Police Captain Richard Landolfi to PBA President David Dougherty dated November 10, 2007 in support of her retaliation claim. Plaintiff identifies this e-mail, which the Court has reviewed (ECF No. 180-2 at 4) as "describ[ing] the poor treatment and hostile work environment of the police department in regards to union activity." (ECF No. 180-3 at 5). According to Plaintiff, "Landolfi's statement shows that the Department harbored resentment for employees who engaged in union activity . . . ." (*Id.*).

Defendants argue that Plaintiff mischaracterizes the content of this e-mail. (ECF No. 180-4 at 1). That is, Defendants state that "the statement itself makes no reference to union activity," that "there is not one word in the entire e-mail referencing union activity or hostility toward union

14

activity," and that "the author of the e-mail testified that the e-mail does not reference or relate to any claim of anti-union animus or hostility." (*Id.* at 1-2).[3]

Having reviewed the e-mail, the Court agrees with Defendants that the e-mail does not reference any discrimination or hostility towards a union member *based on union activity*.[4] The Court also notes that Plaintiff has not refuted Defendants' point that the e-mail's author has testified that the e-mail does not refer to any discriminatory treatment on account of union activity. Further, Plaintiff has not proffered any evidence supporting her position that this e-mail in any way sheds light on Defendants' alleged discriminatory animus. In fact, in the Final Pretrial Order, Plaintiff has indicated that she intends to call Landolfi in her case-in-chief, but has not indicated that he will testify as to the contents or meaning of this e-mail. (ECF No. 161-1 at 94, ¶ 10).

For these reasons, the Court finds that this evidence suffers from the same ailment as several of Plaintiff's proposed evidence of prior acts of discrimination against her as discussed above—specifically, this e-mail does not tend to show Defendants' discriminatory animus towards union members, and therefore cannot be relevant to Plaintiff's retaliation claim. Accordingly, the Court will grant Defendants' motion to bar evidence and testimony pertaining to the 2007 Landolfi e-mail in Plaintiff's case in chief.

b. **Testimony of Officer DiGena**

This Court has already ruled with respect to some of PBA President, Officer Leonardo DiGena's statements.[5] (ECF No. 57, 3-4). According to Plaintiff, "Officer DiGena testified in his

---

[3] Defendants cite to the deposition testimony of Landolfi and indicate that same is attached to the Certification of Robert J. Merryman at Exhibit A. (ECF No. 180-1). The Court has not been able to locate an Exhibit A on the docket.
[4] The e-mail complains "[e]ven after being treated as we have, no contract, job-in-blue taken away and just generally being treated poorly and working in a hostile [indecipherable]." The e-mail also states that Landolfi is "proud of what the Union has done and proud to continue to be a member." However, the e-mail does not reference retaliatory or discriminatory conduct based upon union activities.
[5] On January 24, 2012, Judge Shwartz wrote: "[a]s to Mr. DiGena, the witness may testify consistent with his deposition on the subjects about which he was deposed."

15

deposition that he experienced animosity and hostility due to his union activity. He also testified that he had knowledge that other employees experienced similar animosity and hostility due to union activity." (ECF No. 180-3 at 7). Although conceding that "DiGena did testify that it was his belief that the administration has expressed animosity towards the positions taken by the union," Defendants argue that "the specific instances [DiGena's deposition] addressed . . . did not result in any adverse action against DiGena personally; did not result in DiGena filing any complaint with the Police Department, initiating the grievance process, or making any formal allegation against Defendants or any other individual; and did not involve allegations of any harassment, retaliation, discrimination, or mistreatment." (ECF No. 180-4 at 4).

Plaintiff maintains that "[i]t is well within Officer DiGena's personal knowledge to testify as to how his union activity affected the way in which his supervisors treated him." (ECF No. 180-3 at 13). The Court agrees. As to Defendants' arguments that DiGena's testimony is unsubstantiated, Defendants are free to address said weaknesses through counsel's argument and during their cross-examination. Thus, to the extent permitted by Magistrate Judge Shwartz (*see* ECF No. 57, at 3-4), the Court will permit the introduction of this evidence in Plaintiff's case in chief, so long as that testimony is otherwise appropriate under the Federal Rules of Evidence.

For the above reasons, the Court grants in part and denies in part both Parties' Motions in Limine.[6] An appropriate Order accompanies this Opinion.

**IT IS SO ORDERED.**

DATED: July 27th, 2016

---

[6] The Court notes that the final request in Plaintiff's motion (that "Plaintiff [sic] should not be permitted to un-stipulated facts previously stipulated to and produce all documents concerning retired employees who receive health benefits and a list of their prior employment") has been referred to Magistrate Judge Dickson.

_____
JOSE L. LINARES, U.S.D.J.

17