NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARYANNE COSIMANO, <br><br> Plaintiff, <br><br> v. <br><br> TOWNSHIP OF UNION, *et al.*, <br><br> Defendants. | Civil Action No.: 10-5710 (JLL) <br><br> **OPINION** |

**LINARES**, District Judge.

On April 12, 2017, this Court issued a ruling on the record with respect to two motions filed by Defendants during the course of the trial in the above-captioned matter. Specifically, the Court ruled with respect to Defendants' motion for an order finding that retired Officer Paul Bruno is not "similarly situated" to Plaintiff and also as to Defendants' motion for permission to argue to the jury that Plaintiff failed to mitigate her damages. This Opinion and the accompanying Order memorialize this Court's oral ruling.

**A. Paul Bruno**

Defendants argue that Paul Bruno is not "similarly situated" to Plaintiff because (1) the determination as to his receipt of benefits was made by a different decision maker and (2) the temporal proximity between the two retirements is too remote to render the Bruno retirement relevant. This Court disagrees.

The Third Circuit has held that "[t]he plaintiff is not required to show that he is identical to the comparator in each relevant factor, but he must show substantial similarity." *Houston v. Easton Area Sch. Dist.*, 355 Fed. App'x 651, 655 (2009). This Court finds that the case of Bruno

is substantially similar to the case of Ms. Cosimano. Although the decision makers may have been different, "the Supreme Court has held that evidence offered in a discrimination case concerning purported comparators with different supervisors is neither per se admissible nor per se inadmissible." *Id.* (citing *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379 (2008)).

Here, the Court finds, and has previously suggested, that the most critical points of comparison are (1) whether the retired male officer was subject to the same relevant language of the collective bargaining agreement as plaintiff, and (2) whether the male was not entitled to benefits but nevertheless received them. The Court finds that the existence of identical contract language eliminates a significant amount of the subjective decision-making often at issue in cases involving employment decisions, such as, for example, decisions to demote employees based on a myriad of underlying considerations that would go into that type of decision-making. Accordingly, Plaintiffs may argue that Paul Bruno is "similarly situated" to Plaintiff.

### B. Mitigation

This Court denies in part and grants in part the Defendants' request to argue mitigation of damages to the jury. Specifically, the Court grants Defendants' request to argue mitigation to the jury with respect to Plaintiff's failure to return to work after the Township extended the offer to do so. The Court denies Defendants' motion to argue mitigation with respect to the fact that Ms. Cosimano was covered by one of the more expensive health plans.

As to Plaintiff's decision not to return to work. While the Court finds this to be a close call, the Court is persuaded by Defense counsel's argument that Plaintiff's failure to return to work upon the suggestion that she do so is analogous to unlawful discharge cases where a plaintiff's award of back pay may be cut short if a defendant employer demonstrates that it made a reasonable offer of reinstatement and that the plaintiff declined to return to work. *See, e.g., Blakely v.*

*Continental Airlines, inc.*, 992 F. Supp. 2d 732, 741 (D.N.J. 1998); *c.f. Crump v. United States Dep't of Navy*, 205 F. Supp. 3d 730, 744 (E.D. Va. 2016). The Court is persuaded by Defendants' argument in this case, particularly given the fact that there is little if any evidence suggesting that Plaintiff was facing an intolerable hostile work environment. In other words, there is little evidence tending to show that it would be entirely unreasonable for Plaintiff to return to the environment from which she left. Accordingly, Defendants will be permitted to argue that Plaintiff failed to mitigate her damages in not returning to work.

As to Defendants' argument that Plaintiff failed to mitigate by choosing one of the most expensive health plans. This Court has reviewed the case law cited by Defendants in support of their argument as to mitigation (ECF No. 268 at 35), a well as case law this Court discovered in the course of its own research. Generally, in the context of employment discrimination cases, courts permit defendants to argue failure to mitigate monetary damages where a plaintiff is alleging a discriminatory employment practice and requesting either front or back pay.

The mitigation principle serves the purpose of ensuring that a successful plaintiff is *appropriately* compensated for his or her losses. Specifically, the mitigation principle is intended to ensure that the damage award does not amount to a windfall to the plaintiff. *Blum v. Witco Chem Corp.*, 829 F. 2d 367 (3d Cir. 1987). Given this rationale, it makes sense that a plaintiff alleging wrongful termination has a duty to mitigate potential lost earnings by, for example, seeking available comparable employment. Were it otherwise, an employer may find itself on the hook for damages constituting front-pay to a plaintiff who could very likely be making an even greater salary with a different employer.

The Court finds the case at bar to be distinguishable because here, unlike in each case relied upon by Defendants, Plaintiff is not seeking an award of front-pay or back-pay. Rather, she is

seeking damages to cover the cost of continued enrollment in a specific health insurance plan under which she was covered prior to her retirement. Thus, if the jury finds liability, the way to make Plaintiff whole is to compensate her for the cost of continued coverage under the health plan to which she would have been entitled to *had she not been denied the benefits at retirement*. In other words, if the jury agrees with Plaintiff that similarly situated males were given continued coverage under the plan in question at the time of their retirement whereas Plaintiff, because of her sex, was not, then Plaintiff would be made whole (i.e., compensated) by an award of damages based upon the expected cost of continued coverage under that specific plan. In other words, this case, unlike the traditional mitigation cases in the employment discrimination context, does not carry a risk of Plaintiff receiving a "windfall."

This case is also distinguishable from those relied upon by Defendants in another regard. That is, in the case where a defendant puts forth a failure to mitigate lost wages, the defendant carries the burden of proving that "comparable employment opportunities were available" to the plaintiff. *Abrams v. Lightolier, Inc.*, 841 F. Supp. 584, 594-95 (D.N.J. 1994) (citing *Goodman v. London Metals Exchange, Inc.*, 86 N.J. 19 (1981)). Following this reasoning, were the court to credit Defendants' argument that Ms. Cosimano failed to mitigate by choosing a less expensive health insurance plan, it would be Defendants' burden to show that there was a comparable yet cheaper health insurance plan that offered the Plaintiff the same or comparable benefits that she would have bene entitled to. Here, defense counsel argues that summaries of various health insurance plans have been entered into evidence. However, in the context of health insurance coverage, what plans are "comparable" would involve a complicated analysis (probably requiring expert testimony) as to which terms of health coverage plans are compared against other plans. This analysis would also require an understanding of what Plaintiff's health care need and

coverage requirements would be. In this context, this jury has not heard any evidence that any other plans were "comparable" in a meaningful sense vis-a-vis Ms. Cosimano. Accordingly, the Court will not permit Defendants to argue to the jury that Ms. Cosimano failed to mitigate her damages by not selecting another expensive health care plan presumably with different cost of coverages.

The jury, of course, is free to accept or reject the figure calculated by Plaintiff's expert. For example, the jury can choose to reduce the expert's number based upon such things as their determination as to her credibility or the underlying assumptions upon which the calculations were made.

In summary, Defense counsel can argue to the jury that Plaintiff failed to mitigate her damages by not returning to work, but cannot argue to the jury that Plaintiff failed to mitigate her damages by selecting a less expensive health plan.

IT IS SO ORDERED.

DATED: April 13, 2017

JOSE L. LINARES, U.S.D.J.