NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARYANNE COSIMANO,<br><br>        Plaintiff,<br><br>v.<br><br>TOWNSHIP OF UNION,<br><br>        Defendant. | Civil Action No.: 10-5710 (JLL)<br><br>**OPINION** |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of Defendant Township of Union ("Defendant" or the "Township")'s motion for judgment as a matter of law ("JMOL") or, alternatively, for a new trial. (ECF No. 324).[1] Plaintiff, Ms. Maryanne Cosimano, has opposed Defendant's motion (ECF No. 329), and Defendant has replied to that opposition (ECF No. 335). The Court has reviewed all papers filed in support of and in opposition to the pending motion, and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons discussed below, Defendant's motion is granted in part and denied in part.

## I.    Background

Both the Parties and this Court are quite familiar with the facts of this case. Accordingly,

---

[1] While Plaintiff originally named the Township Administrator, Frank Bradley, and the Township Police Director, Daniel Zieser as Defendants to this matter, Plaintiff voluntary dismissed the claims against Mr. Bradley prior to the commencement of trial, and this Court granted Director Zieser JMOL after the jury returned a verdict against Director Zieser (ECF Nos. 301, 203). Additionally, after the commencement of the trial, Plaintiff conceded to the dismissal of her claim for retaliation under 42 U.S.C. § 1983. This Opinion and the accompanying Order do not in any way reverse or alter the dismissal of the claims against Frank Bradley or Director Zieser or the dismissal of Plaintiff's claim under Section 1983.

the Court will only discuss the facts herein to the extent necessary to resolve Defendant's motion.

Trial on the above-captioned matter commenced on April 4, 2017. (ECF No. 276). At the close of Plaintiff's case in chief, Defendants Township of Union and Police Director Daniel Zieser ("Zieser") moved for JMOL pursuant to Federal Rule of Civil Procedure 50(a). In response to said motion, Plaintiff conceded to the dismissal of her retaliation claim under 42 U.S.C. § 1983. Additionally, the Court denied Defendants' motion with respect to the Township's liability under the New Jersey Law Against Discrimination ("NJLAD"), granted Defendants' motion with respect to Plaintiff's claims for punitive damages, and reserved on the motion as to Zieser's liability for aiding and abetting the Township's NJLAD violation. (ECF Nos. 286, 287).

On April 13, 2017, a jury returned a verdict in favor of Ms. Cosimano, and against both Defendants, in the amount of $355,486.00. (ECF No. 289). Specifically, the jury found the Township liable for a violation of the NJLAD, and also found Defendant Zieser liable for aiding and abetting the Township in its NJLAD violation. (ECF No. 293).

Defendants renewed their motion for JMOL as to Defendant Zieser's liability at the conclusion of the trial, after the jury returned a verdict against both Defendants. On April 27, 2017, after reviewing briefing from both Parties on the renewed motion for JMOL, this Court granted Defendants' motion for JMOL as to Director Zieser's liability. (ECF Nos. 301, 302). On June 22, 2017, this Court entered a Judgment in Plaintiff's favor (ECF No. 316), which Judgment was amended on July 14, 2017 (ECF No. 320).

Defendant Township of Union filed the pending motion for JMOL or, alternatively, for a new trial, on July 19, 2017. (ECF No. 324, "Def.'s Mov. Br."). Plaintiff filed an opposing brief on August 7, 2017 (ECF No. 329, "Pl.'s Opp. Br.") and Defendant replied to same on August 14, 2017 (ECF No. 336). This matter is now ripe for the Court's adjudication.

## II.   Legal Standard

### A. Motion for JMOL

A motion for judgment as a matter of law should be granted "only if, viewing the evidence in the light most favorable to [the nonmovant] and giving [the nonmovant] the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury could reasonably find liability." *Wittekamp v. Gulf & Western Inc.*, 991 F.2d 1137, 1141 (3d Cir. 1993). "Although judgment as a matter of law should be granted sparingly," a scintilla of evidence is not enough to sustain a verdict of liability. *Walter v. Holiday Inns, Inc.*, 985 F.2d 1232, 1238 (3d Cir.1993). "The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the [factfinder] could properly find a verdict for that party." *Patzig v. O'Neil*, 577 F.2d 841, 846 (3d Cir.1978) (citation omitted) (quotation omitted). Thus, although the court draws all reasonable and logical inferences in the nonmovant's favor, an order granting judgment as a matter of law is appropriate if, upon review of the record, it is apparent that the verdict is not supported by legally sufficient evidence. *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993).

### B. Motion for a New Trial

A motion for JMOL that follows a jury verdict "may include an alternative or joint request for a new trial under Rule 59." Fed. R. Civ. P. 50(b). Federal Rule of Civil Procedure 59(a) provides that:

> [t]he court may, on motion, grant a new trial on all or some of the issues—and to any party—as follows: (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court ...

Fed. R. Civ. P. 59(a). It is within the discretion of the district court to grant a new trial. *Wagner v. Fair Acres Geriatric Ctr.*, 49 F.3d 1002, 1017 (3d Cir. 1995). Although Rule 59 does not detail

the grounds on which a new trial may be granted, the following grounds have been recognized by this Circuit: "the verdict is against the clear weight of the evidence; damages are excessive; the trial was unfair; and that substantial errors were made in the admission or rejection of evidence or the giving or refusal of instructions." *Lightning Lube, Inc. v. Witco Corp.*, 802 F.Supp. 1180, 1186 (D.N.J.1992) (citations omitted), *aff'd*, 4 F.3d 1153 (3d Cir. 1993).

When reviewing a motion for a new trial, a court must view the evidence in the light most favorable to the party for whom the verdict was returned. *Wagner by Wagner v. Firestone Tire & Rubber Co.*, 890 F.2d 652, 656 (3d Cir.1989). Where a motion for a new trial is based primarily on the weight of the evidence, the discretion of the trial court is limited. *Klein v. Hollings*, 992 F.2d 1285, 1290 (3d Cir.1993); *see also Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 366 (3d Cir.1999). Indeed, "new trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks [the] conscience." *Williamson v. Conrail*, 926 F.2d 1344, 1353 (3d. Cir. 1991); *see also Greenleaf*, 174 F.3d at 366. Although a court is permitted to consider the credibility of trial witnesses and to weigh evidence, it must "exercise restraint to avoid usurping the jury's primary function." *Hurley v. Atl. City Police Dep't*, 933 F. Supp. 396, 403 (D.N.J.1996), *aff'd*, 174 F.3d 95 (3d Cir.1999).

## III.    Discussion

### A. Defendant's motion for JMOL

Defendant contends that this Court should grant JMOL in its favor for several reasons. First, the Township argues that Plaintiff failed to establish her claim of gender discrimination under the NJLAD. (Def.'s Mov. Br. at 10-24). Second, Defendant contends that the Township must be

granted JMOL because this Court lacks subject matter jurisdiction over Plaintiff's NJLAD claims under the *Rooker-Feldman* doctrine. (Id. at 25-28). The Court disagrees on both counts.

### i. Plaintiff Presented Sufficient Evidence from which a Jury Could Determine that the Township violated the NJLAD

The Court first addresses Defendant's argument that Plaintiff failed to prove her claim of sex discrimination. Claims under the NJLAD follow the burden-shifting test espoused in *McDonell Douglas Corp v. Green*, 411 U.S. 792 (1973). Under that analysis, a plaintiff has the initial burden of setting forth a *prima facie* case for sex discrimination. To state a *prima facie* case of sex discrimination, a plaintiff must show (1) that she was a member of a protected class, and (2) that she was treated less favorably than other employees who were similarly situated but who were not female.

Once a plaintiff satisfies the above *prima facie* showing, the burden of production (but not persuasion) then shifts to the Defendant. Specifically, a defendant in an NJLAD case is required to articulate a legitimate, non-discriminatory reason for its adverse employment action against the plaintiff. Assuming the defendant meets that burden of production, the burden then shifts back to the plaintiff, who must show that the reason articulated by defendant for the adverse employment decision was merely a pretext for discrimination.

Here, the Township contends that Plaintiff failed to satisfy the second element of her *prima facie* case of sex discrimination—namely, that she was treated differently from "similarity situated" male employees of the Township. (Def.'s Mov. Br. at 17-20). Specifically, the Township contends that Plaintiff's only comparator, Paul Bruno, "was not similarly situated as a matter of law." (Id. at 17).

This Court has already considered and rejected Defendant's argument that Paul Bruno was not similarly situated to Plaintiff. (See ECF No. 295). Specifically, in this Court's April 17, 2017 Opinion resolving the Township's motion to exclude evidence relating to Paul Bruno, the Court found

> that the most critical points of comparison are (1) whether the retired male officer was subject to the same relevant language of the collective bargaining agreement as plaintiff, and (2) whether the male was not entitled to benefits but nevertheless received them. The Court finds that the existence of identical contract language eliminates a significant amount of the subjective decision-making often at issue in cases involving employment decisions, such as, for example, decisions to demote employees based on a myriad of underlying considerations that would go into that type of decision-making.

(ECF No. 295 at 2). Thus, the Court rejected Defendant's arguments (raised again in the instant motion) that Paul Bruno was not similarly situated because he was subject to a different decision-maker than Ms. Cosimano and because the eight-year gap between Paul Bruno's and Ms. Cosimano's retirement renders the Bruno retirement irrelevant. The Court sees no reason to depart from this prior ruling. Accordingly, the Court finds that Plaintiff put forth sufficient evidence to support her *prima facie* case of sex discrimination.

Next, Defendant contends that it satisfied its burden at the second step of the *McDonnell Douglas* burden-shifting analysis to set forth a legitimate, non-discriminatory reason for its decision to deny Ms. Cosimano health benefits upon her retirement. (Def.'s Mov. Br. at 21-23). Specifically, Defendant contends that "the Township articulated that it denied Plaintiff retiree health benefits based on Ms. Green's correct application of the collective negotiations agreement that Plaintiff did not have sufficient employment services as a Township employee or as a sworn law enforcement officer to be eligible for benefits." (Id. at 22). Thus, Defendant contends that the jury's finding, as indicated on the jury verdict sheet, that Defendant did not set forth a legitimate, non-discriminatory explanation for the denial of Ms. Cosimano's health benefits is

against the weight of the evidence. The Court agrees. However, the Court addresses this particular aspect of the jury verdict in more detail in Section III.B.i., below.

With respect to the final aspect of the *McDonnell Douglas* test, Defendant contends that Plaintiff did not offer any evidence establishing that the Township's reason for denying Plaintiff the benefits – that is, that Plaintiff was not contractually entitled to the benefits—was a pretext for sex discrimination. (Def.'s Mov. Br. at 24-25). The Court disagrees with the Township on this point.

Defendant contends that the evidence Plaintiff presented in support of her burden to show pretext did not, in fact, demonstrate that the Township's stated reason for the denial of health benefits was a pretext for unlawful discrimination. (Id.). Defendant argues that: (1) there was no evidence presented that Plaintiff's transfer out of the Detective Bureau was on account of her gender;[2] (2) there was no evidence that Ms. Green's decision to deny her benefits was based on Plaintiff's sex; (3) and Plaintiff only identified one male comparator, which is insufficient to show pretext. (Id.).

However, as Plaintiff points out, Defendant's summary of the evidence is incomplete. (See Pl.'s Opp. Br. at 31-34). In addition to evidence pertaining to Plaintiff's demotion, the jurors heard testimony from Ms. Green with respect to how she came to the determination that Plaintiff was not entitled to benefits. Based upon Ms. Green's direct testimony and the testimony elicited during her cross-examination, the jurors were free to judge Ms. Green's credibility as to her decision-making. Additionally, although Defendant contends that Plaintiff offered only one male comparator, the Court notes that Plaintiff offered the jury exhibit P-70, the e-mail chain between Ms. Green and Zieser concerning Nicholas Ardito's receipt of health benefits. At sidebar during

---

[2] As discussed in Section III.B.ii, below, this Court agrees with the Township on this point.

the trial, this Court ruled that this e-mail chain "is certainly highly probative of this issue whether they are looking at things differently when they deal with a male or female." (Apr. 10, 2017 Tr. at 75:4-6). In summary, Plaintiff offered sufficient evidence from which a reasonable jury, judging the credibility of the witnesses presented, could have found in Plaintiff's favor with respect to the NJLAD claim.

### ii. The *Rooker-Feldman* Doctrine does not Divest this Court of Subject Matter Jurisdiction over this Act

The Township argues that the *Rooker-Feldman* doctrine barred this Court from hearing Plaintiff's claim for sex discrimination. (Def.'s Mov. Br. at 25-29). Generally speaking, the *Rooker-Feldman* doctrine bars a plaintiff from seeking to avoid or reverse a State Court judgment by re-litigating the matter in Federal Court. "The *Rooker*-Feldman doctrine . . . is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobile Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 283 (2005).

In this case, the Township argues that Plaintiff's sex discrimination case is barred by the *Rooker-Feldman* doctrine in light of the Superior Court of New Jersey's entry of judgment affirming the arbitrator's findings that Plaintiff was not contractually entitled to retiree health benefits. (Def.'s Mov. Br. at 25-29). In response, Plaintiff maintains that "the *Rooker-Feldman* doctrine is inapplicable because the July 14, 2017 Judgment of this court does not adjudicate the same issue as the June 14, 2013 Judgment of the Superior Court of New Jersey and, consequently, the Federal Court Judgment does not review and nullify the State Court Judgment." (Pl.'s Opp. Br. at 329). The Court agrees with Plaintiff.

This Court previously had occasion to consider a similar argument in ruling on Defendants' motion *in limine* to bar evidence offered in support of any claim of entitlement to health benefits pursuant to the CBA or alleging discrimination and/or retaliation based on the denial of retiree health benefits. (ECF No. 176-1 at 1-2). In this Court's August 1, 2016 Opinion, the Court explained:

> Plaintiff's sex discrimination and retaliation claims are sufficiently distinguishable from the underlying contractual issue of whether Plaintiff was or was not entitled to retiree health benefits based on the CBA. In fact, as Plaintiff herself has conceded: "the contract is essentially irrelevant. All the arbitration decision means is that Cosimano can no longer assert that she is entitled to health benefits under the contract. It has nothing to do with the sex discrimination claim[.]" (ECF No. 176-3 at 11). Therefore, the Court finds no reason to depart from earlier rulings of this Court that Cosimano "may not re-litigate the issues of what type of service qualifies for health benefits [under the contract], because that issue has been decided and affirmed as to her claim." (ECF No. 85 at 5).

(ECF No. 197 at 3). The above analysis applies with equal force to this Court's analysis as to whether Plaintiff's sex discrimination claims are barred by *Rooker-Feldman*. That is, the jury's finding that the Township violated the NJLAD by discriminating against Plaintiff based upon her sex does not reverse, negate, nor render a nullity the Superior Court of New Jersey's order affirming the ruling of the arbitrator that Plaintiff was not contractually entitled to health benefits upon retirement.

Defendant contends that "[t]he legal conclusion implied by the jury verdict is that the Township had to provide Plaintiff the benefits in order to not discriminate against her. However, had the Township provided the benefits, it would have violated the terms of both the CNA and the New Jersey Employer-Employee Relations Act (the 'EERA'), N.J.S.A. 34:13A-1, et seq. This is because the EERA prohibits public employers from unilaterally changing benefits provided under a labor contract . . . ." (Def.'s Mov. Br. at 27). However, Defendant's argument is misguided. The legal conclusion implied by the jury verdict is not that the Township had to provide Plaintiff

with the benefits in order to not discriminate against her; rather, the legal conclusion from the jury's determination that the Township violated the NJLAD is that the Township's decision to deny Plaintiff benefits was, at least in part, motivated by discriminatory animus. In other words, if the Township had denied Plaintiff's retirement benefits based upon the terms of the contract alone, and if the jury believed the Township's legitimate reason for the denial, the Township would not have been found in violation of the NJLAD.

Defendant further argues that in "repeatedly referenc[ing] th[e] . . . 'years of service' at trial," Plaintiff re-litigated the issue of her contractual entitlement to benefits, notwithstanding Judge Hochberg's prior ruling that this Court will abstain from making any determination as to "the correctness of the decision that Cosimano lacks the requisite years of service to quality for the benefits." (Def.'s Mov. Br. at 28; ECF No. 85).

In its jury instructions, this Court advised the jury as follows:

> The Township has also maintained, and this Court has directed, that the decision that Ms. Cosimano was not eligible for benefits under the term of the collective bargaining agreement has been determined to be a correct interpretation of that contract and it's not an issue in this case. However, that is not what the Plaintiff is contending in this case.
> Plaintiff is contending that the Township actually applied a test of years in the pension system on past practices to determine eligibility for health insurance for similarly situated male health employees and discriminated against the Plaintiff by applying a different test to her.

(Apr. 12, 2017 Tr. at 71:10-21). Thus, the jury was advised that the language of the CNA was not in dispute in this case. What was in dispute, however, was whether the Township actually applied the terms of the contract in denying Plaintiff health benefits upon her retirement. Plaintiff was perfectly within her right to raise this issue with Ms. Green.

In summary, the Court finds that the ruling of the arbitrator and the Superior Court of New Jersey's subsequent judgment in favor of the Township with respect to the CNA, did not divest this Court of subject matter jurisdiction over this action.

**B.    Defendant's Motion for a New Trial**

**i.    The Jury Verdict was Against the Clear Weight of the Evidence**

Defendant contends that the Township is entitled to a new trial because the jury verdict was against the weight of the evidence. (Def.'s Mov. Br. at 29-30). Specifically, Defendant contends that the jury's finding that the Township did not satisfy its burden of production at the second step of the *McDonnell Douglas* burden-shifting test was against the weight of the evidence. (Id.). On this point, the Court agrees.

The Verdict Sheet submitted to the jury included three questions with respect to Plaintiff's claim for an NJLAD violation against the Township. First, the jury was instructed to answer the following question: "Did Plaintiff prove by a preponderance of the credible evidence that she was discriminated against with respect to the determination of eligibility for retiree health benefits when compared to other Police retirees who were similarly situated but who were not female?" The Verdict Sheet then directed the jury, having answered affirmatively to this first question, to answer the following, second question: "Did Defendant Township of Union articulate or advance a legitimate basis for the determination that Plaintiff was not eligible for fully paid health benefits at the time she retired on August 1, 2010?" To this question, the jury answered "no." Because the Verdict Sheet directed the jury that if the answer to the second question was "no," then the jury has found in favor of the Township, the jury was not instructed to answer the third and final question with respect to the NJLAD claim—that is, whether "Plaintiff prov[ed] by a preponderance

of the credible evidence that Defendant Township of Union's legitimate basis was a pretext for discrimination."

In this case, the Township certainly set forth a legitimate, non-discriminatory rationale for its decision by way of the CNA. It is undisputed that an arbitrator, in a finding that was entered into judgment by the Superior Court of New Jersey, has already determined that Plaintiff was not contractually entitled to retiree health benefits. Accordingly, on April 12, 2017, this Court charged the jury as follows: "As the Township noted, the decision that Ms. Cosimano was not eligible for benefits under the term of the collective bargaining agreement has been determined to be a correct interpretation of that contract and it's not an issue in this case." (Apr. 13, 2017 Tr. at 71:10-21). In light of the above jury charge, the jury should have answered the second question on the Verdict Sheet in the affirmative, and should have proceeded to answer the final question of the *McDonell Douglass* test of whether the reason given for the denial was merely a pretext for discrimination.

In opposition to the Township's argument that the jury's finding with respect to the second question warrants a new trial, Plaintiff cites to case law from the Second Circuit to argue that the Township waived this argument by not raising it as soon as the verdict was read. (Pl.'s Opp. Br. at 43). Plaintiff further argues that this argument is unpersuasive on the merits, because the jury was not required to find that the reason offered by the Township for its denial of benefits was, in fact, legitimate. (Id. at 42-43). Neither of these arguments cure the clear error in the jury's verdict.

First, although the Court has reviewed the Second Circuit case finding that a defendant had waived its objection to the jury verdict by failing to raise that objection at the time the verdict was read, *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 53 (2d Cir. 1998), the Court agrees with the Township that no such waiver rule exists within the Third Circuit. Rather, as the Township correctly notes, pursuant to Federal Rules of Civil Procedure 50(b) and 59(b), the Township had

twenty-eight (28) days after this Court's entry of judgment to move for a new trial. The Township moved within the requisite time period.

Second, the Court disagrees with Plaintiff that the jury was not required to answer the second question in the affirmative. Given the fact that this Court instructed the jury that "the decision that Ms. Cosimano was not eligible for benefits under the term of the collective bargaining agreement has been determined to be a correct interpretation of that contract and it's not an issue in this case," the jury was required to find that the Township had met its burden of production at the second step of the *McDonnell Douglas* burden shifting test. In answering the second question in the negative, the jury disregarded this Court's instruction. Accordingly, the verdict was against the weight of the evidence and a new trial is warranted.

### ii.     The Court's Rulings on the Admissibility of Certain Evidence

Defendant argues that the Court made "various errors in admission and/or rejection of evidence," which errors require a new trial. (Def.'s Mov. Br. at 30-52). Although the Court has thoroughly reviewed both Parties' arguments with respect to these evidentiary rulings, the Court notes that, through both oral and written opinions, the Court has already addressed and rejected many of the same arguments Defendant makes in this motion for a new trial.

First, Defendant argues that the Court's decision to permit Plaintiff to present evidence relating to Paul Bruno was erroneous because Paul Bruno is not "similarly situated" to Plaintiff. (Id. at 30-31). The Court directs the Parties to Section III.A.i. of this Opinion, in which the Court reiterated its earlier rulings with respect to Mr. Bruno.

Second, the Township argues that the Court erred in its handling of the arbitration awards. Specifically, the Township maintains that the Court "modified" its August 1, 2016 ruling that

barred the introduction of the Cosimano and Garretson Arbitration Awards into evidence but did not bar the Township "from informing the jury of the award in another manner that complies with the rules of evidence." (Def.'s Mov. Br. 31, citing ECF No. 197 at 7).[3]  In this Court's August 1, 2016 Opinion, the Court explained that "introduction of the arbitration awards would only serve to confuse the jury." (ECF No. 197 at 7).  Further, the Court noted that "because the Court has already ruled that Plaintiff will not be permitted to re-litigate the issue of her entitlement to health benefits under the contract, the majority of Defendants' arguments as to the admissibility of the arbitration opinions are moot." (Id.).

At trial, this Court barred the Parties from referencing the Arbitration Award.  Specifically, the Court instructed as follows:

> . . .  I don't want you to reference the arbitration award, the arbitration document itself or anything because it is irrelevant to what is being tried here. We have agreed that the arbitration award is correct, so I don't want you referencing it in your opening statement.
> It may be the plaintiff opens the door, I suppose there could be a situation during the course of the trial where he says, well, you never challenged the right to a male officer to get benefits, and you may be able to say, well yeah, we did challenging it, there is an arbitration on Officer X or something.  But absent something like that, I don't want this jury getting confused as to why there was an arbitration and what the arbitration held or any of that.  I think it would be more prejudicial than probative and would lead to confusion.

(Apr. 5, 2017 Tr. at 13:19-14:9).

---

[3] The Court declines to address the Township's argument that the Court erred in barring the reference or introduction of the Garretson Arbitration Award into evidence. (See Def.'s Mov. Br. at 40-43).  This Court previously ruled that "[b]ecause the Court has already determined that Plaintiff will be precluded from re-litigating the issue of her entitlement to retiree health benefits under the terms of the CBA, Defendants' argument that the Garretson award is relevant to the contractual interpretation issue is moot." (ECF No. 197 at 8).  The Township has not presented the Court with any new arguments that would persuade the Court that this initial ruling was erroneous.

According to the Township, by so ruling, "the Court prevented Defendants from presenting their primary defense in this matter and allowed Plaintiff to mislead the jury with regard to her alleged entitlement to retiree health benefits." (Def.'s Mov. Br. at 32). The Township further contends that their rationale for seeking to rely on the Arbitration Awards was not to prove that the Township did not discriminate against Plaintiff; rather, the Township's reason for seeking to introduce the Arbitration Award was to support its position that Ms. Green's "interpretation of the contract, as requiring twenty-five (25) years of Township and law enforcement service in order to be eligible for retiree health benefits, was in fact correct, and that in order to be eligible for retiree health benefits under the terms of the CNA, Plaintiff was required to have twenty-five (25) years of Township and law enforcement service, which she did not." (Id. at 35-36). Moreover, the Township argues that the jury was more confused by the Parties' inability to reference or introduce the Arbitration Award, since "Plaintiff's counsel repeatedly referenced the contract language in his opening; cross examined witnesses at length about the contract language; and referenced the contract language in his closing." (Id. at 38).

The Court has already determined that the Township is entitled to a new trial. The Court does not find its ruling barring the Parties from referencing or introducing the Cosimano Arbitration Awards, in and of itself, to be problematic. However, in light of the jury's factual determination that the Township did not set forth a legitimate, non-discriminatory reason for the denial of benefits, the Court recognizes that a more thorough instruction to the jury may be necessary during the course of the new trial. Therefore, the Court hereby instructs the Parties to meet and confer and, no less than (14) days prior to the commencement of the new trial, to attempt to provide the Court with an agreed-upon instruction with respect to the Cosimano Arbitration Award.

Next, the Township argues that the Court erred in allowing Plaintiff to present evidence of her transfer from the Detective Bureau to the Patrol Bureau. (Def.'s Mov. Br. at 43-48). In summary, the Township argues that "despite the fact that Zieser did not make the determination that Plaintiff was not eligible for retiree health benefits under the terms of the contract, Plaintiff was permitted to present evidence with regard to an alleged demotion of Plaintiff from the Detective Bureau by Zieser, which decision did not in any respect involve the only decisionmaker in this case, Kathleen Green." (Id. at 43). The Township further argues that there was no inference of discrimination to be gleamed from the transfer. (Id. at 45-46). Thus, evidence of the transfer was, according to the Township, both irrelevant and highly prejudicial. (Id.).

The first two arguments presented by the Township in support of its argument that evidence of the transfer was erroneously omitted are simply factual disputes as to whether the transfer was, in fact, a demotion and whether the transfer resulted in a loss of pay. (Def.'s Mov. Br. at 44). The Court declines to parse these arguments, as the factual significance of the transfer is a matter for the jury's deliberation—not this Court's. However, the Township's third argument—namely, that "there was no evidence presented on which to base a conclusion that the decision to reassign Plaintiff was based on gender"—gives the Court greater pause. (Id.). As Defendant notes, two male Detectives were transferred along with Plaintiff, and a female officer was transferred into the Detective Bureau. (Id.). The Township further notes that "there is no evidence that the decisionmaker in this matter, Kathleen Green, had any involvement in, or knowledge of, Plaintiff's reassignment in April 2010, at the time Ms. Green determined that Plaintiff did not meet the eligibility requirements for retiree health benefits in August 2010." (Id. at 45).

In opposition, Plaintiff refers the Court to its Opinion resolving the Parties' motions *in limine*, wherein the Court held that "evidence relating to Cosimano's demotion is relevant to her

sex discrimination claims." (ECF No. 197 at 11). In that Opinion, the Court explained that unlike other incidents that the Court barred from being introduced into evidence, "Plaintiff's demotion was the event immediately precipitating her retirement, and was a decision issued while the Individual Defendants were employed by the Township." (Id. at 11). Accordingly, the Court held that "Defendants cannot seriously dispute that Plaintiff's demotion and the facts surrounding that demotion are relevant to her instant claims." (Id.).

Notably, in its August 1, 2016 Opinion, the Court was operating under a world in which Plaintiff's claim for retaliation in violation of Section 1983 was still pending and where Director Zieser was still a party to this matter. Having heard the testimony of the witnesses with respect to Plaintiff's transfer from to the Patrol Bureau, however, the Court agrees with the Township that that the evidence did not support any inference of sex discrimination. Plaintiff introduced evidence relating to her transfer as circumstantial evidence of sex discrimination.

However, as this Court has previously noted, "circumstantial evidence in the context of an NJLAD claim must 'support an inference of discrimination.'" (ECF No. 197 at 12, citing *Brown v. Cty. Of Passaci*, 2014 WL 2533768, *5 (N.J. Super. Ct. App. Div. June 6, 2014). To that end, where the discriminatory nature of proposed circumstantial evidence is ambiguous at best, the Third Circuit has affirmed the district courts' decisions excluding that evidence. *See Martin v. Port Auth.*, 115 Fed. App'x. 556, 558-59 (3d Cir. 2004) (holding that the magistrate judge did not abuser her discretion in excluding testimony relating to an alleged discriminatory remark made by the father of plaintiff's supervisor where the "comment did not contain any derogatory racial epithets; [and] in fact . . . did not even mention race"); *see also Lee v. Jackson*, Civ. No. 11-195, 2013 WL 2062246, *10 (E.D. Pa. May 14, 2013) ("Plaintiff's personal opinion that the comments show anti-Chinese bias is simply insufficient.").

Here, Plaintiff has not presented any evidence supporting an inference of discrimination that can be gleamed from her demotion from the Detective Bureau to Patrol. Specifically, Plaintiff has not refuted the Township's statements that Plaintiff was transferred along with two male Detectives, and was replaced with a female officer. (Def.'s Mov. Br. at 44-45). Nor has Plaintiff refuted the Township's statement that Ms. Green did not have any involvement or knowledge in Plaintiff's demotion, or that the demotion was in any way linked to Plaintiff's sex. Accordingly, evidence pertaining to Plaintiff's transfer will not be admitted at the new trial.

Next, the Township argues that the admission of evidence on Plaintiff's First Amendment retaliation claim under 42 U.S.C. § 1983 was unfairly prejudicial to the Township. (Def.'s Mov. Br. at 48-53). The Court need not address this argument. That is, because this Court has already granted the Township's motion for a new trial, and because Plaintiff previously conceded to the dismissal of her Section 1983 claim, any evidence that was admitted in support of Plaintiff's Section 1983 claim during the first trial will not be admitted during the new trial.

### C. The Jury Instructions were Proper

The Township maintains that a new trial is warranted because "the jury instruction on the definition of 'similarly situated' was capable of confusing and misleading the jury." (Def.'s Mov. Br. at 53). The Court's jury instruction with respect to "similarly situated" was as follows:

> In order to determine that someone is "similarly situated" to Plaintiff, you are not required to find that Ms. Cosimano is identical to a male retiree, but you must find that any male retiree is "substantially similar" to her. In making that determination you may consider, among any other factor you deem to be relevant, such factors as who the decision-maker was in each case, the contract that they were operating under, the temporal proximity between the retirement date of one male retiree and the Plaintiff, and also who their employer was, and the positions that each individual held or employment that they had with the town.

(Apr. 12, 2017 Tr. 72:25-73:10). According to the Township, this definition was legally erroneous and incomplete. (Def.'s Mov. Br. at 54). That is, the Township argues that the Court's statement that a male can be deemed similarly situated if he was "substantially similar" to Plaintiff violates Third Circuit precedent requiring that the comparators "be similarly situated in all relevant respects." (Id., quoting *Ewell v. NBA Properties, Inc.*, 94 F. Supp. 3d 612, 624 (D.N.J. 2015)). Defendant further argues that the instruction omitted one of the most important factors for consideration—namely, "whether the decisionmaker actually knew about the proferred comparator at the time he/she made the decision at issue." (Id.).

At the outset, the Court notes that the Township's proposed jury charge omitted all of the above information that the Township now argues was essential to the definition of "similarly situated." (See ECF No. 285 at 3). To the extent the Township believes certain factors and/or language is legally required in the Court's jury charge, the Township shall file a proposed jury charges no less than fourteen (14) days prior to the commencement of the new trial date that includes the alleged critical information omitted from this Court's charge.

The Township also argues that the jury instructions were improper in that the Court did not permit the jury to consider whether Plaintiff failed to mitigate her damages by selecting a cheaper insurance plan. (Def.'s Mov. Br. at 55-57). On April 12, 2017, this Court explained its rationale for rejecting a mitigating instruction with respect to the health insurance plans. (Apr. 12, 2017 Tr. at 54:2-56:20). In particular, the Court noted that "[i]n this case the jury has not heard any evidence that any other plans were comparable in a meaningful sense vis-à-vis the Plaintiff's, what the coverages were that the Plaintiff would have gotten and what her needs were vis-à-vis that coverage. (Id. at 55:24-56:3).

The Township now challenges this particular aspect of the Court's ruling, directing the Court's attention to a "Plan Comparison Summary" that the jury could have used to decide whether Plaintiff should have selected a cheaper health insurance plan. (Def.'s Mov. Br. at 56). This document does not alter the Court's analysis. The jury was not privy to, nor should it have been privy to, Ms. Cosimano's particular health insurance needs. As this Court stated on the record on April 12th, the jury was free to accept or reject the damages figure provided by Plaintiff's counsel as it saw appropriate. Thus, the Court rejects Defendant's argument that the Court erred in failing to give the jury a mitigation charge with respect to Plaintiff's choice in health insurance plans.

Finally, the Township contends that the Court's decision to reserve on the Township's motion for JMOL as to Director Zieser until after the jury returned its verdict prejudiced the Townhip. (Def.'s Mov. Br. at 57-59). In light of the fact that the Court has directed a new trial in this matter on other grounds, the Court need not consider this argument. This Court has already granted the Township's motion for JMOL with respect to Director Zieser's liability. (ECF No. 301). Accordingly, the new trial will proceed against the Township of Union only.

## IV.    Conclusion

For the reasons stated herein, the Township's motion for a new trial is granted, and the Township's motion for a JMOL is denied. Because the Court has already granted the Township's prior motion for JMOL with respect to Director Zieser (ECF No. 301), the only Defendant remaining in this matter for the new trial is the Township of Union.

IT IS SO ORDERED.

DATED:        August 31st, 2017

JOSE L. LINARES
CHIEF JUDGE, U.S. DISTRICT COURT