NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARYANNE COSIMANO,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>TOWNSHIP OF UNION,<br><br>　　　　　Defendant. | Civil Action No.: 10-cv-5710 (JLL)<br><br>**OPINION** |

**LINARES**, Chief District Judge

This matter comes before the Court by way of Defendant Township of Union's motion for judgment as a matter of law ("JMOL") or, alternatively, for a new trial pursuant to Federal Rules of Civil Procedure 50(b) and 59. (ECF No. 390). Plaintiff, Maryanne Cosimano, has opposed Defendant's motion, (ECF No. 392), and Defendant has replied thereto. (ECF No. 395). The Court has reviewed the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons discussed below, Defendant's motion is denied.

**I.　　BACKGROUND**

Both the parties and this Court are quite familiar with the facts of this case. Accordingly, the Court will only discuss the facts herein to the extent necessary to resolve Defendant's motion. The second trial in the above-captioned matter commenced on April 2, 2018. (ECF No. 370). On April 4, 2018, outside the presence of the jury, Defendant moved for JMOL pursuant to Federal Rule of Civil Procedure 50(a). The Court then heard oral argument on Defendant's motion. The Court reserved judgment on the motion and granted Defendant permission to renew its motion at

the conclusion of trial. On April 6, 2018, the jury returned a verdict finding the Township of Union liable for a violation of New Jersey's Law Against Discrimination ("NJLAD") and in favor of Ms. Cosimano in the amount of $341,804.00. (ECF No. 377). At the conclusion of trial, Defendant renewed its motion for JMOL, and the Court issued its Opinion denying Defendant's motion on April 18, 2018. (ECF No. 382). Defendant now moves again for JMOL, or alternatively, for a new trial.

## II. LEGAL STANDARD

A court may grant a motion for JMOL under Rule 50(a) only if, after hearing the plaintiff's case in full, the "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). The Court must make this assessment viewing the evidence in the light most favorable to the nonmoving party and giving the nonmovant the advantage of every fair and reasonable inference. *Wittekamp v. Gulf & W., Inc.*, 991 F.2d 1137, 1141 (3d Cir. 1993). "Although judgment as a matter of law should be granted sparingly," a scintilla of evidence is not enough to sustain a verdict of liability. *Walter v. Holiday Inns, Inc.*, 985 F.2d 1232, 1238 (3d Cir. 1993). "The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party." *Patzig v. O'Neil*, 577 F.2d 841, 846 (3d Cir. 1978). "Thus, although the Court draws all reasonable and logical inferences in the nonmovant's favor," an order granting judgment as a matter of law is appropriate if, "upon review of the record, it is apparent that the verdict is not supported by legally sufficient evidence." *Lighting Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993).

A motion for JMOL that follows a jury verdict "may include an alternative or joint request for a new trial under Rule 59." Fed. R. Civ. P. 50(b). Federal Rule of Civil Procedure 59(a) provides that:

> [t]he court may, on motion, grant a new trial on all or some of the issues—and to any party—as follows: (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . .

Fed. R. Civ. P. 59(a)(1). It is within the discretion of the district court to grant a new trial. *Wagner v. Fair Acres Geriatric Ctr.*, 49 F.3d 1002, 1017 (3d Cir. 1995). Although Rule 59 does not detail the grounds on which a new trial may be granted, the following grounds have been recognized by this Circuit: "the verdict is against the clear weight of the evidence; damages are excessive; the trial was unfair; and that substantial errors were made in the admission or rejection of evidence or the giving or refusal of instructions." *Lightning Lube, Inc. v. Witco Corp.*, 802 F. Supp. 1180, 1186 (D.N.J. 1992) (citations omitted), *aff'd* 4 F.3d 1153 (3d Cir. 1993).

When reviewing a motion for a new trial, a court must view the evidence in the light most favorable to the party for whom the verdict was returned. *Wagner v. Firestone Tire & Rubber Co.*, 890 F.2d 652, 656 (3d Cir. 1989). Where a motion for a new trial is based primarily on the weight of the evidence, the discretion of the trial court is limited. *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 366 (3d Cir. 1999); *Klein v. Hollings*, 992 F.2d 1285, 1290 (3d Cir. 1993). Indeed, "new trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks [the] conscience." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir. 1991). Although a court is permitted to consider the credibility of trial witnesses and to weigh evidence, it must "exercise restraint to avoid usurping the jury's primary function." *Hurley v. Atl. City Police Dep't*, 933 F. Supp. 396, 403 (D.N.J. 1996), *aff'd* 174 F.3d 95 (3d Cir. 1999).

## III. DISCUSSION

### A. Defendant's Motion for JMOL

Defendant moves for JMOL on two grounds. First, Defendant argues that Plaintiff failed to establish her claim of gender discrimination under NJLAD and second, it argues that this Court lacks subject matter jurisdiction over Plaintiff's NJLAD claim pursuant to the *Rooker-Feldman* doctrine. (ECF No. 390-1 at 22–47). The Court disagrees with both arguments.

Defendant's contention that Plaintiff failed to establish her claim of gender discrimination under NJLAD is duplicative of the motion for JMOL on which the Court already heard oral argument. The Court has already issued an Opinion explaining at length why Plaintiff has credibly established her claim of gender discrimination under NJLAD, such that a reasonable jury could find in Plaintiff's favor with respect to her NJLAD claim. (*See* ECF No. 382). The Court need not conduct the same analysis again.

With respect to Defendant's *Rooker-Feldman* argument, the Court respectfully points to its Opinion on Defendant's motion for JMOL or for a new trial at the conclusion of the first trial in this case. (ECF No. 337). At the conclusion of the first trial, Defendant also argued that the *Rooker-Feldman* doctrine barred this Court from hearing Plaintiff's NJLAD sex discrimination claim. There, the Court engaged in a three-page analysis and concluded that "the ruling of the arbitrator and the Superior Court of New Jersey's subsequent judgment in favor of the Township with respect to the CNA, did not divest this Court of subject matter jurisdiction over this action." (ECF No. 337 at 8-11). As there are no factors that have changed between the first trial and the second trial in this matter that would alter the Court's *Rooker-Feldman* analysis, it relies on its prior Opinion in concluding that it properly possesses subject matter jurisdiction over this case.

**B. Defendant's Motion for a New Trial**

Defendant argues that a new trial is warranted for three reasons: (1) the jury's verdict constitutes a miscarriage of justice; (2) the Court erred in its admission or rejection of certain evidence; and (3) the Court erred in its instructions to the jury. (ECF No. 390-1 at 48–64). As to Defendant's first argument, Defendant reiterates that Plaintiff set forth no evidence proving that Defendant's legitimate, non-discriminatory reason for denying Plaintiff lifetime health benefits was a pretext. (ECF No. 390-1 at 47–48). As this Court has already determined above that a reasonable jury could conclude that Plaintiff has proven her case of gender discrimination under NJLAD, the jury's verdict finding the same does not warrant a new trial.

Defendant next sets forth two evidentiary objections that it believes warrant a new trial. The first is that the Court erred in allowing Plaintiff to present evidence relating to Paul Bruno, because Mr. Bruno was not "similarly situated" to Plaintiff under applicable law. (ECF No. 390-1 at 48–49). The Court has addressed this very same argument many times before and concluded that Mr. Bruno is similarly situated to Plaintiff. (*See* ECF No. 382 at 4–5; ECF No. 337 at 5–6; ECF No. 295 at 2). Once again, the Court sees no reason to depart from its prior rulings.

Defendant's second objection is that the Court erred in barring Defendant from presenting evidence of the Cosimano and Garretson arbitration awards and the state court judgments confirming those arbitration awards. (ECF No. 390-1 at 50–59).[1] Defendant argues that the Court's decision in its August 1, 2016 Opinion barring the introduction of the arbitration awards but allowing Defendant to inform "the jury of the award in another manner that complies with the

---

[1] The Court declines to address Defendant's arguments in this section related to the Garretson arbitration award. This Court previously ruled that "[b]ecause the Court has already determined that Plaintiff will be precluded from re-litigating the issue of her entitlement to retiree health benefits under the terms of the [CNA], Defendant['s] argument that the Garretson award is relevant to the contractual interpretation issue is moot." (ECF No. 197 at 8). Defendant has not presented the Court with any new arguments that would persuade the Court that this initial ruling was erroneous.

5

rules of evidence," (ECF No. 197 at 7), "barred Defendant from presenting evidence of the grievance and/or the Arbitration that confirmed the correctness of the Township's determination that Plaintiff was not eligible for retiree health benefits at the time she chose to retire based on the contract or past practice." (ECF No. 390-1 at 50). This Court's August 1, 2016 Opinion explained that "introduction of the arbitration awards would only serve to confuse the jury." (ECF No. 197 at 7). The Court further noted that "because the Court has already ruled that Plaintiff will not be permitted to re-litigate the issue of her entitlement to health benefits under the contract, the majority of Defendant's arguments as to the admissibility of the arbitration opinions are moot." (ECF No. 197 at 7).

At trial, the Court instructed the parties as follows:

With regard to this whole issue of past practice, I agree that at one time, the union made an argument before some arbitrator that the contract that was applicable to Ms. Cosimano was not the actual contract, but the contract as modified by the practices of the town, and the arbitrator made a ruling that said that wasn't the case, that the contract was the contract, and she was not entitled under the terms of that contract to health benefits. That was affirmed by the Superior Court of the State of New Jersey, and that issue is not being retried here, so no one is going to be able to claim in this court that Ms. Cosimano is entitled to her lifetime health benefits under the contract either as written or as modified by past practices. However, that does not mean that then the town could with impunity institute a practice that was discriminatory in nature by notwithstanding the contract, give the benefits nevertheless to one group and not to a protected class. That is a different issue than saying that she is entitled to it under the contract. She is not, but that doesn't mean the town can then discriminate. . . .

What was litigated before the arbitrator was the question of a contract, whether or not under the contract she was entitled to benefits. And one of the arguments there was: Judge, this contract was modified by past practices. The arbitrator said no, that is not true, I find that that is not the case, and that was the end of that. Here it is a discrimination case, completely different. We are not saying the contract was modified. That is not what is being tried. What is being tried is there was a practice that was discriminatory and being applied differently to people similarly situated. That's it.

(Apr. 3, 2018 Tr. at 121:3–23; 125:8–20).

6

In this Court's Opinion following the first trial in this matter, it recognized that "a more thorough instruction to the jury may be necessary" regarding the arbitration award, and instructed counsel for the parties to "attempt to provide the Court with an agreed-upon instruction with respect to the Cosimano Arbitration Award." (ECF No. 337 at 15). The parties were not able to do so. (*Compare* ECF No. 358 at 62 *with* ECF No. 360-1 at 1). The Court thus issued the following jury instruction during the second trial:

> The plaintiff in this matter, Maryanne Cosimano, claims that the Township of Union unlawfully discriminated against her by not providing her with lifetime health benefits upon her retirement because of her gender. The Township of Union denies these allegations and instead maintains that Ms. Cosimano was not provided with retiree health benefits at the time she retired in August 2010 because she was not eligible for retiree health benefits at that time based on the eligibility requirements set forth in the collective negotiations agreement between the Township of Union and the Policemen's Benevolent Association Local No. 69, the labor union that represented Ms. Cosimano during her employment with the Township. I instruct you that it has already been determined that at the time of Ms. Cosimano's retirement, she was not entitled to lifetime health benefits under the collective negotiations agreement in effect at the time of her retirement. However, that is not what Plaintiff is contending in this case. Plaintiff is contending that the Township actually applied a test of years in the pension system and past practice to determine eligibility for health insurance for similarly situated male employees and discriminated against Plaintiff by applying a different test. If that is what happened, that is evidence of discrimination. If Ms. Cosimano was in fact denied retiree health benefits because of her gender, that would be unlawful under the New Jersey Law Against Discrimination.

(ECF No. 380 at 4). In the Court's reading of the jury instructions to the jurors, it also stated "it has already been determined that at the time that Ms. Cosimano retired, she was not entitled to lifetime health benefits under the collective negotiations agreement," and that this issue "has already been legally decided at another tribunal." (Apr. 5, 2018 Tr. at 46:21–47:1). Additionally, the Court found as a matter of law that Defendant had articulated a legitimate non-discriminatory reason for its decision not to grant Plaintiff retiree health benefits, and took that question out of the hands of the jury on the verdict sheet. (ECF No. 378 at 1).

7

Defendant rehashes the same arguments it made regarding the admission of the arbitration awards at the close of the first trial. It contends that "the Court prevented Defendants[sic] from presenting their primary defense in this matter and allowed Plaintiff to mislead the jury with regard to her alleged entitlement to retiree health benefits." (ECF No. 390-1 at 50; *see also* ECF No. 324-1 at 42 (making the same argument with the same language)). It also realleges that the reason to admit the arbitration awards was not to prove that Defendant did not discriminate against Plaintiff, but rather to support its position that the Township's Human Resources Director, Ms. Green's "interpretation of the contract, as requiring twenty-five (25) years of Township and law enforcement service to be eligible for retiree health benefits, was in fact correct, and that in order to be eligible for retiree health benefits under the terms of the CNA, Plaintiff was required to have twenty-five (25) years of Township and law enforcement service, which she did not." (ECF No. 390-1 at 54; *see also* ECF No. 324-1 at 45–46 (making the same argument with the same language)). Moreover, Defendant reargues that the jury was more confused by the parties' inability to reference or introduce the arbitration award, since Plaintiff's counsel "repeatedly referenced the contract language in his opening; cross examined witnesses at length about the contract language and an alleged 'past practice'; and referenced the contract language and a past practice repeatedly in his closing." (ECF No. 360-1 at 57; *see also* ECF No. 324-1 at 48 (making the same argument with very similar language)).

In its previous post-trial Opinion, the Court concluded that it did "not find its ruling barring the Parties from referencing or introducing the Cosimano Arbitration Awards, in and of itself, to be problematic." (ECF No. 337 at 15). Given that Defendant is simply making arguments it has already presented to this Court, the Court sees no reason to depart from its prior holding. The one change to Defendant's argument is the addition of its concern over the reference to past practice.

However, the Court addressed all of Defendant's concerns either in the jury instruction or on the record. The Court, in fact, affirmed the legitimacy of Defendant's primary defense by finding as a matter of law that it had stated a legitimate non-discriminatory reason for denying Plaintiff's health benefits, it instructed the jury that the Ms. Green's interpretation of the contract was correct, and as a result, the Court clearly did not leave the "jury with the understanding that it could, on its own, interpret the labor agreement, decide past practices and, thereby, decide whether it felt Plaintiff was eligible for health benefits under the terms of the CNA." (ECF No. 390-1 at 57). The Court thus reaffirms its conclusion in its prior Opinion that its decision to bar the introduction and reference of the arbitration awards is not grounds for a new trial.

Defendant lastly argues that errors in the jury instructions require a new trial. Again, Defendant rehashes its argument from the close of the first trial by arguing that the Court's instruction on the definition of "similarly situated" was capable of confusing and misleading the jury. (ECF No. 390-1 at 59; *see also* ECF No. 324-1 at 63). Defendant believes that the Court's jury instruction "does not satisfy the legal definition of 'similarly situated.'" (ECF No. 390-1 at 60). This is because the Court's jury instructions informed the jury that Plaintiff and the proffered comparator are similarly situated if they are "substantially similar," rather than instructing the jury that Plaintiff and the comparator "must be similarly situated in all relevant aspects." (ECF No. 390-1 at 60 (quoting *Ewell v. NBA Props., Inc.*, 94 F. Supp. 3d 612, 624 (D.N.J. 2015))). However, the standard for assessing a similarly situated comparator is a highly fact specific and contextual inquiry. *See Monaco v. Am. Gen. Assurance Co.*, 359 F.3d 296, 305 (3d Cir. 2004) (noting that determining whether someone is similarly situated "requires a court to undertake a fact-intensive inquiry on a case-by-case basis rather than in a mechanistic and inflexible manner"); *Hansen v. Rite Aid Corp.*, No. A-4750-16T4, 2018 WL 2027137, at *7 (N.J. Super. App. Div. May 2, 2018)

(citing *Ewell* and noting that there is no exhaustive list of criteria for such a determination or that such criteria are of equal significance in every context, and thus, the "trial [court must] make a sensitive appraisal in each case to determine the most relevant criteria"). The Court's instructions to the jury followed this fact specific and case dependent approach. (ECF No. 380 at 4). Thus, the Court does not believe its jury instruction on Plaintiff's proffered comparator warrants a new trial. *Hansen*, 2018 WL 2027137, at *7 ("there is no bright-line rule for determining who is a 'similarly situated' employee.") (quoting *Jason v. Showboat Hotel & Casino*, 329 N.J. Super. 295, 305 (App. Div. 2000)).

Defendant also argues that the jury instructions misstate the legal standard for a similarly situated comparator where the instructions state that the jury may consider "who the decision-maker was in each case," rather than instructing the jury that the decision-maker must be the same for Plaintiff and comparator. (ECF No. 390-1 at 60). The Court has already addressed and rejected this argument three times, and need not do so again. (*See* ECF No. 295 at 2; ECF No. 337 at 6; ECF No. 382 at 4–5).

Defendant's final argument regarding the Court's jury instructions is that the jury should have been instructed that it could consider whether Plaintiff failed to mitigate damages by retiring instead of remaining employed until she was eligible for health benefits under the contract. (ECF No. 390-1 at 61). At trial, the Court specifically rejected Defendant's invitation to add an instruction to the jury charge regarding Plaintiff's duty to mitigate. The Court stated that:

> despite defense counsel's assertion that the duty to mitigate[e in] this case is akin to a traditional duty to mitigate in a claim seeking backpay, I don't think that that is, in fact, the case here, which is a case for lost benefits as a result of what it alleged was discrimination. I think under the specific circumstances of this case, where the nature of the mitigation is to have to go back to work at a place where the jury already found she was discriminated against, or give up her accrued time at that place, I think as a matter of law would be unreasonable to expect that the plaintiff

10

would have to do that in order to meet the requirements of mitigation, so I don't think it is pertinent in the context of this case to charge the jury that.

(Apr. 5, 2018 Tr. at 40:15–41:3).

The Court continues to believe that this case is distinct from cases where a duty to mitigate damages is imposed on a plaintiff seeking backpay. In order for the jury to reach the issue of mitigation in this case, it would have necessarily found that Plaintiff was discriminated against on the basis of her gender. Defendant's argument is that Plaintiff had a duty to remain at the place of employment where she was discriminated against until she was eligible for her retirement benefits under the contract so as to relieve the discriminating employer of its obligation to provide Plaintiff with the same benefits it awarded to male officers who were not eligible for those benefits under the contract. (ECF No. 390-1 at 61–63). The logical conclusions to Defendant's argument would render this lawsuit moot: Plaintiff is required to stay at the job until she is eligible for her benefits under the CNA, at which point she is contractually entitled to the very thing she is suing for. This situation is categorically different from one where an employee seeking backpay has a duty to mitigate damages by looking for comparable work, and the Court believes that requiring Plaintiff to remain at the job where she was discriminated against would be contrary to the objectives and goals of NJLAD. *See Acevedo v. Flightsafety Int'l, Inc.*, 449 N.J. Super. 185, 190 (App. Div. 2017) (noting that NJLAD is remedial legislation designed to "'eradicate the cancer of discrimination[,]' protect employees, and deter employers from engaging in discriminatory practices," and reasoning that an employer should not benefit from its wrongful actions) (quoting *Jackson v. Concord Co.*, 54 N.J. 113, 124 (1969)); *see also McDowell v. Avtex Fibers, Inc.*, 740 F.2d 214, 217 (3d Cir. 1984) (noting that pension plan benefits are collateral benefits "designed to serve social policies independent of those served by back pay awards," and thus refusing to deduct pension benefits from the total damages award "even though the wrongful termination together

11

with vested rights in the benefits made the employee eligible for the benefits"), *vacated on other grounds*, 469 U.S. 1202 (1985).

## IV. CONCLUSION

For the reasons stated herein, Defendant's motion for JMOL, or alternatively, for a new trial is DENIED. An appropriate Order accompanies this Opinion.

DATED: September 25th, 2018

JOSE L. LINARES
Chief Judge, United States District Court